**RYAN–WALSH STEVEDORING COMPANY, INC., a corporation et al., Plaintiffs,**

v.

**M/V KHALIJ STAR, her engines, tackle, appurtenances, etc., Defendant.**

**Unimarine Reefer Services and Ceprano Maritime Corporation, Claimants.**

**No. C80–632.**

United States District Court,
W. D. Washington,
Seattle Division.

Dec. 24, 1980.

Jeffrey R. Masi of Bogle & Gates, Seattle, Wash., for plaintiffs.

Teresa Pelton Johnson and C. Keith Allred of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for defendant and claimants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

BEEKS, District Judge.

The KHALIJ STAR is a "reefer" ship owned by Ceprano Maritime Corporation (Claimant), and, at times material to this action, time chartered to Unimarine Reefer Services (also a Claimant) which in turn voyage chartered the vessel to American Fruit Company (AFC). Ryan-Walsh Stevedoring Company and Southern Steamship Agency (Plaintiffs) do business in New Orleans, where this dispute arose.

In mid-October, 1979, AFC retained Southern to act as agent for the KHALIJ STAR during its call in New Orleans. Southern made disbursements on its behalf which are admitted to be due and owing. Ryan was retained by AFC to provide stevedoring services. In order to obtain this contract, Ryan agreed to loan AFC $379,932.07 on a 30-day promissory note to allow AFC to pay for construction of a loading facility. Its claim here is limited to stevedoring services rendered, the amount of which is admitted to be due and owing. Plaintiffs, seeking to foreclose maritime liens in these amounts, now bring this motion for summary judgment.

By silence, Claimants admit that the claims against the KHALIJ STAR are for "necessaries" for which maritime liens generally attach. 46 U.S.C. § 971 (1976). Claimants assert three bases for denying the existence of maritime liens: First, that Plaintiffs should be considered joint ventur-

ers with the voyage charterer and, thus, not a stranger to the vessel; second, that knowledge of a no-lien clause to which the voyage charterer (AFC) was subject should be imputed to Plaintiffs; and third, that Plaintiffs have waived their maritime liens.

Accepting all the factual allegations of Claimants as proven, the Court sees no genuine issue as to any material fact, and so finds this cause ripe for summary judgment pursuant to F.R.Civ.P. 56. Having considered all memoranda, affidavits and exhibits filed in this action, the Court finds and rules as follows:

Claimants cite *Sasportes v. M/V SOL DE COPACABANA*, 581 F.2d 1204 (5th Cir. 1978) as listing the relevant criteria for whether parties are in a de facto joint venture where there is no express agreement to that effect. Accepting their assertions 1) that Plaintiffs shared in the loss when AFC proved unable to pay back its 30-day note; 2) that Plaintiffs anticipated a long, ongoing relationship with AFC; and 3) that Plaintiffs advanced money to AFC in order to commence their relationship, a joint venture is clearly not shown. None of Claimants' allegations or proffered evidence satisfy any of the criteria in *Sasportes*, and most telling is the lack of elements which that Court described as "more crucial": participation in profits and losses of the enterprise, and the right of significant control over the operations (including rights delegated to the other joint venturer). *Id.* at 1209. As to the first, Plaintiffs stood only to receive repayment of the principal plus interest. Even under a contemplated plan to base repayment on the volume of the loading operation, only the *time* in which repayment would be made, not the amount of total principal to be paid, would be affected. The risk of loss was only that of any creditor—that the insolvency of the debtor would prevent repayment. Therefore, Plaintiffs' relationship with AFC was purely that of debtor/creditor, and not joint venturer. As to the second "crucial" factor, evidence that Plaintiffs had any right of control over AFC's operations is lacking.

■ Knowledge of the no-lien clause to which AFC was subject cannot be imputed

to plaintiffs. In *Lake Union Drydock Company v. M/V Polar Viking*, 446 F.Supp. 1286 (W.D.Wash.1978), this Court construed the legislative intent behind the 1971 amendments to the Maritime Lien Act, 46 U.S.C. § 971 et seq. (1976), and held that "the assertion of a lien will be barred only if the materialman has actual knowledge of the no-lien clause." *Id.* at 1291. There is no evidence that there was actual knowledge on the part of Plaintiffs of AFC's no-lien clause. The argument that none of the post-1971 cases (such as *Polar Viking*) referring to "actual knowledge" dealt with situations where the owner had appointed an agent in the port, as was done here, has no merit. The master of the vessel is always present as the owner's appointed agent, but this does not preclude relying on a charterer's presumed authority to bind the vessel. 46 U.S.C. § 972 (1976).

Claimants' second argument that knowledge of the no-lien clause should be imputed because AFC had such knowledge is rejected because Plaintiffs and AFC were not joint venturers. Claimants' final argument is that Plaintiffs could not presume the charterer to have authority because of the modern "custom" to insert no-lien clauses into charter parties. This ignores the intent of Congress in its 1971 amendments to the lien act and is likewise rejected. *See Lake Union Drydock Company v. M/V Polar Viking, supra.*

■ Claimants contend that Plaintiffs have waived any maritime liens because of Plaintiffs' relationship with AFC. Claimants must overcome the requirement that a supplier "clearly manifest" the intent to forego a lien. *Jan C. Uiterwyk Co., Inc. v. MV Mare Arabico*, 459 F.Supp. 1325, 1333 (D.Md.1978). The elements of waiver are not shown under the facts alleged by Claimants and presumed to be true for the purposes of this motion. First, there was no joint venture. The only "financial involvement" is a creditor/debtor relationship. The making of a loan in and of itself does not constitute a waiver of liens.

Reliance on AFC's corporate credit also cannot be an implied waiver. "The materialman does not waive his lien merely by

relying on the personal credit of the owner or charterer. He may rely on both." *Polar Viking, supra,* at 1292. There is no evidence that Plaintiffs relied *exclusively* on the credit of AFC.

Claimants also contend that failure of Plaintiffs to deal with the owner's appointed agent constituted waiver of a lien against the owner's vessel. There is no waiver as a presumption that a charterer such as AFC is also authorized to bind the vessel, despite the existence of another agent known to have authority, is permissible. 46 U.S.C. § 972 (1976).

Accordingly, Plaintiffs' motion for summary judgment is granted, in the amounts of $65,800.14 for plaintiff Ryan and $5,254.27 for plaintiff Southern, plus prejudgment interest at the statutory rate of 10% and taxable costs. Plaintiffs seek a greater rate but have made no factual showing justifying such a variance.